28 F.3d 1211
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcelo MORIS-HENRIQUEZ, Defendant-Appellant.
 No. 93-5600.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 26, 1994.
Decided June 9, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-93-92).
 David J. Kiyonaga, Kiyonaga & Kiyonaga, Alexandria, VA, for appellant.
 Helen F. Fahey, U.S. Atty., Thomas M. Hollenhorst, Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Marcelo Moris-Henriquez was convicted of conspiring to distribute cocaine in violation of 21 U.S.C.A. Sec. 846 (West Supp.1994) and distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1988). On appeal, Moris-Henriquez argues that there was insufficient evidence of one large conspiracy and that the district court erred in giving a Sawyers* charge after the jury foreman disavowed the verdict in open court and expressed to the judge that he could not decide the case fairly. We disagree.
 
 
 2
 * The evidence at trial demonstrated that Moris-Henriquez was involved in a cocaine distribution ring in Arlington, Virginia. On September 4, 1992, an undercover officer met with Moris-Henriquez and inquired whether Moris-Henriquez could supply him with drugs. Moris-Henriquez responded that he did not have any drugs but that he usually acquired cocaine from his brother on Fridays. Officer Ruiz and Moris-Henriquez exchanged telephone pager numbers.
 
 
 3
 On September 5, 1992, Officer Ruiz met with Moris-Henriquez and another individual, Bernardo, and purchased 2.81 grams of cocaine from Bernardo. After meeting with Officer Ruiz again, Moris-Henriquez told Officer Ruiz that he would introduce him to "somebody that can really supply you."
 
 
 4
 On September 17, 1992, Moris-Henriquez introduced Officer Ruiz to Wilfrido Capois, who handed Officer Ruiz 6.12 grams of cocaine. After Officer Ruiz gave Capois $475, Capois gave it to Moris-Henriquez to count. A couple of days later, Moris-Henriquez called Officer Ruiz to inquire whether he wanted any more cocaine. After Officer Ruiz stated that he did, Moris-Henriquez informed him that Capois would give him a call. About twenty minutes later, Capois called and the two men arranged a "buy" where Officer Ruiz purchased 14 grams of cocaine.
 
 
 5
 On September 28, 1992, Officer Ruiz received a series of drug-related telephone calls from Moris-Henriquez and Capois. On September 29, 1992, Officer Ruiz purchased 54.70 grams of cocaine from Capois. The next day, Officer Ruiz met with Moris-Henriquez and Capois and bought another 7.535 grams of cocaine. In addition, Capois "fronted" Officer Ruiz 3.305 grams of cocaine.
 
 
 6
 On October 6, 1992, after paging Moris-Henriquez, Officer Ruiz received a call from Eduardo who stated that Moris-Henriquez had told him to call to see if Ruiz wanted anything. Later that month, Officer Ruiz purchased 57.59 grams of cocaine from Capois. On November 12, 1992, Moris-Henriquez called Officer Ruiz and expressed his anger that he was not included in the previous deal. Moris-Henriquez stated that, because of this, he was going to introduce Officer Ruiz to someone else. Later that day, Moris-Henriquez introduced Office Ruiz to Javier. The next day, Officer Ruiz purchased 3.49 grams of cocaine from Moris-Henriquez, Javier, and an unidentified male. On another occasion, Officer Ruiz purchased 12.533 grams of cocaine from Javier.
 
 
 7
 On November 30, 1992, Officer Ruiz and Moris-Henriquez arranged the sale of two ounces of cocaine. Thereafter, Officer Ruiz received a call from Javier to finalize the plans. When Officer Ruiz arrived at the designated place, the same unidentified black male approached and sold him 58.66 grams of cocaine.
 
 
 8
 After about an hour of deliberation, the jury announced its verdict of guilty on all three counts. During a poll of the jury, James Nance, the foreperson, disavowed the verdict by answering "no" when asked if this was his verdict. The district court instructed the jury to continue its deliberation. Shortly thereafter, Nance submitted a note to the court which stated that "this type of case hits home," and his decision would be unfair to the Defendant. The court sent a note back to Nance, thanking him and inquiring whether he could decide the case.
 
 
 9
 After Nance responded "no," the court gave the jury a Sawyers charge, to which the defense objected.
 
 
 10
 A short time later, the jury returned with a new foreperson and announced a verdict of guilty on all counts. A second poll of the jury determined that the verdict was unanimous.
 
 
 11
 The district court sentenced Moris-Henriquez to 121 months of imprisonment and five years of supervised release for each count, to run concurrently. Moris-Henriquez timely appeals.
 
 II
 
 12
 In evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the Government, and determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Furthermore, we accord the benefit of all reasonable inferences to the Government. Tresvant, 677 F.2d at 1021.
 
 
 13
 In order to support a verdict of guilty of conspiracy, the Government must show that a conspiracy existed, that the defendant had knowledge of the conspiracy, and that the defendant voluntarily became part of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992); United States v. Badolato, 701 F.2d 915, 920 (11th Cir.1983). Furthermore, a conspiracy does not have to have a "discrete, identifiable organizational structure" and can be linked by a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993), petition for cert. filed, --- U.S.L.W. ---- (U.S. Feb. 22, 1994) (No. 93-8056).
 
 
 14
 Moris-Henriquez alleges that the Government did not prove a single conspiracy but at best established only a series of smaller conspiracies. The question of whether the evidence shows a single conspiracy or multiple conspiracies is one of fact within the province of the jury. Id. at 1051. Moris-Henriquez argues that the point at which he stopped dealing with Capois and started transacting with Javier was the end of one conspiracy and the beginning of another. We disagree.
 
 
 15
 The fact that coconspirators sometimes compete for customers does not necessarily disprove the existence of a conspiracy. Id. at 1054. In considering circumstantial, as well as direct evidence, and allowing the Government the benefit of all reasonable inferences from the facts proven to those sought to be established, we find that the jury's factual finding that there was one conspiracy among the actors to distribute cocaine in Arlington is not clearly erroneous.
 
 III
 
 16
 Moris-Henriquez alleges that the district court abused its discretion in charging the jury after the foreman had disavowed the verdict in open court and particularly after the foreman sent a note to the judge expressing that he could not decide the case fairly. Reviewing the district court's actions for an abuse of discretion, see Sincox v. United States, 571 F.2d 876, 878 (5th Cir.1978), we disagree.
 
 
 17
 A calmly, dispassionate, and balanced effort on the part of a trial judge to induce a verdict does not invade the province of the jury. Sawyers, 423 F.2d at 1341-42. Our review of the instruction in this case shows that the court charted an evenhanded course in urging the jury to reconsider. Moreover, we note that juror Nance never stated, at any time, that he had a reasonable (or any other) doubt of Appellant's guilt--he merely stated that his decision would be unfair to Appellant. Under these circumstances, we find no improper coercion and no abuse of discretion.
 
 
 18
 Moris-Henriquez's claims are meritless. Accordingly, we affirm the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 United States v. Sawyers, 423 F.2d 1335 (4th Cir.1970)